UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X   Case No. 16-22617-rdd
In Re:
                                                               Chapter 11
HELEN RACANELLI,                                               Subchapter V

                    Debtor.                                    JUDGE: Hon. Robert D. Drain
-----------------------------------------------------------X

**OBJECTION TO CONFIRMATION OF SUBCHAPTER V SMALL BUSINESS DEBTOR PLAN OF REORGANIZATION**
**[DKT NO. 72]**
**(18 Mountainview Avenue, Ardsley, New York 10502)**

U.S. Bank National Association, as Trustee for GSAA Home Equity Trust 2006-19, Asset-Backed Certificates, Series 2006-19 ("Creditor"), by and through its authorized loan servicer, Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper"), by and through its authorized undersigned counsel, as secured creditor of the above-entitled Debtor, Helen Racanelli, ("Debtor") hereby submits the following *Objection to Confirmation of Chapter 11 Plan* ("Objection") filed at Docket No. 72.

### I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

**A. LOAN HISTORY**

1.    On August 10, 2006, Debtor executed a promissory note in the principal sum of $508,000.00 (the "Note"). The Note reflects that it was indorsed in blank. (*See* Claim No. 3-1).

2.    The Note is secured by a Mortgage (the "Mortgage")[2] granting a security interest in the real property located at 18 Mountainview Avenue, Ardsley, New York 10502 (the "Property") which is more fully described in the Mortgage. (*See* Claim No. 3-1).

---

[1] Pursuant to Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure, Creditor requests that the Court take judicial notice of the documents and other records on file in the this case.

[2] The Note and Mortgage are collectively referred to as the "Loan."

3. Subsequently, interest in the Mortgage was assigned to Creditor. (*See* Claim No. 3-1).

**B.    PROCEDURAL HISTORY**

4. On May 3, 2016, Debtor filed the instant voluntary petition under Chapter 13 of the Bankruptcy Code in the Southern District of New York and was assigned bankruptcy case number 16-22617-rdd (the "Bankruptcy Case").

5. On August 30, 2016, Creditor filed its *Proof of Claim* ("Claim") listing a secured claim of $901,684.95, including pre-petition arrears of $372,757.51. (*See* Claim No. 3-1).

6. On November 29, 2016, Debtor filed an Adversary Complaint against, among others, Nationstar (the "First Complaint") and was assigned adversary case number 16-08254-shl (the "Adversary Case"). The First Complaint alleged multiple counts that were without merit and implausible, and were dismissed against Nationstar by Order dated July 24, 2017, granting Nationstar's Motion to Dismiss.

7. On August 18, 2017, Debtor moved for leave to file an amended adversary complaint. The court held a hearing on December 15, 2017, and granted Debtor leave to file an amended adversary complaint by Order dated January 23, 2018. Debtor filed an Amended Adversary Complaint (the "Second Complaint") on February 20, 2018. To date, the Court has yet to enter a judgment on the Second Complaint.

8. On March 16, 2020, Debtor filed a Motion to Convert the Bankruptcy Case under Chapter 11 with a Subchapter V Designation (the "Motion to Convert"). Creditor objected to the Motion to Convert, requesting dismissal.

9. On March 20, 2020, Creditor field a Motion for Payment of Administrative Expenses ("Admin Claim Motion"). (Dkt No. 51). On October 8, 2020, Court entered an Order Granting the Admin Claim Motion, awarding Creditor an Admin Claim for $81,130.65. The Order required the Debtor to maintain taxes and insurance for the Property going forward. (Dkt No. 70).

10. On June 16, 2020, the Chapter 13 Trustee filed a Motion to Dismiss the Chapter 13 Case ("Motion to Dismiss") based on the Debtor's lack of eligibility for a Chapter 13 (debtor exceeds the debt limits). Further, the Debtor defaulted on payments and failed to file required documents. Creditor joined in the Motion to Dismiss.

11. On September 4, 2020, the Court granted the Debtor's Motion to Convert, converting the Debtor's Chapter 13 Bankruptcy Case to a Subchapter V.

12. Within 7 days, a small business debtor is required to file: (a) its most recent balance sheet, statement of operations, cash-flow statement, and Federal income tax return; or (b) a statement made under penalty of perjury that no balance sheet, statement of operations, or cash-flow statement has been prepared and no Federal tax return has been filed. To date, the Debtor has yet to file the required Sub V documents or amended Schedules for Chapter 11, which were due by September 11, 2020.

13. Debtor is delinquent on monthly operating reports since conversion of the case, including the months of September 2020 – December 2020.

14. On December 3, 2020, Debtor filed her proposed Subchapter V Plan of Reorganization ("Plan"). (Dkt No. 72). First, the Plan fails to comply with the majority of the provisions of Subchapter V as outlined in Code sections 1190-1191. Second, the Plan lists all secured claims (Claims 3, 4, and 5) together in the same class (Class 1), but the claims are substantially dissimilar. Third, the Plan lists Creditor's claim as "unimpaired," but proposed to modify the Claim (See Plan, Class 1). Fourth, the claim treatment is unclear and contingent upon a judgment in the Adversary Case in the Debtor's favor. Specifically, the Debtor suggests the amount of Creditor's Claim (if any) will be determined through the related Adversary Proceeding. In the event the Debtor is unsuccessful in avoiding Creditor's Claim in its entirety, Debtor proposes to bifurcate Creditor's Claim into a secured claim and unsecured claim based on the alleged value of the Property. However, the Plan fails to disclose the amount of the secured claim and/or the proposed property value. Debtor proposes to pay the secured claim in full upon the Effective

Date of the Plan with the unsecured claim paid pro rata through the Plan. The Plan is unclear and speculative (at best). Finally, in the event Creditor's Claim is allowed, the Plan lacks feasibility. No information is provided regarding the nature of the Debtor's alleged business operation, history of the business, financial projections, funding of the Plan, and how the Debtor generates income (if any).

## II. ARGUMENT

**A.    THE PLAN FAILS TO MEET THE SUBCHAPTER V CONFIRMATION REQUIREMENTS**

15.   The Debtor fails to comply with §1129 of the Bankruptcy Code, or the new sections 1190, 1191 and 1194 governing confirmation of a subchapter V plan of reorganization. 11 U.S.C. § 1129(a)(1) provides that a court shall confirm a plan only if it complies with the applicable provisions of the bankruptcy code. 11 U.S.C. § 1129(a)(1).

16.   First, the Plan lists Creditor's Claim as "unimpaired." At the same time, Debtor proposes to bifurcate the Claim into a secured and unsecured portion. Generally, a claim is impaired unless it "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest…." or "…notwithstanding any contractual provision or applicable law that entitles a creditor to demand or receive accelerated payments of such claim or interest after the default…(A) cures any such default that occurred *before or after* commencement of the case, (B) reinstates the maturity of such claim or interest as existed before such default, (C) compensates the creditor for any damages incurred as a result of any reasonable reliance on such contractual provisions or applicable law; (D) compensates the creditor for any non-monetary default, other than failure to operate a nonresidential real property lease; and (E) *does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the creditor*. *See* 11 U.S.C. §1124(a), (b) (emphasis added). Indeed, generally, any alteration of rights constitutes impairment, even if the value of the rights is enhanced. *See In re Wabash Valley Power Ass'n, Inc.*, 72 F.3d 1305 (7th Cir. 1995). As a result, Creditor's Claim is impaired and the Plan must be amended to reflect the same.

17. Second, new § 1190(1) requires information that would otherwise be included in a disclosure statement. The plan must include: (1) a brief history of the operations of the debtor; (2) a liquidation analysis; and (3) projections regarding the ability of the debtor to make payments under the proposed plan. 11 U.S.C. § 1190(1). The Plan contains none of the required information. The Plan fails to provide a history of the Debtor, projections or a liquidation analysis. No information is provided regarding the nature of the Debtor's alleged business operation, history of the business, financial projections, funding of the Plan, and how the Debtor generates income (if any).

18. Third, new § 1190(2) requires the plan to provide for the submission of "all or such portion of the future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C § 1190(2). Debtor fails to meet the requirements.

19. Fourth, cramdown confirmation under new § 1191(b) does not require that the plan meet the projected disposable income requirement of § 1129(a)(15), applicable only in the case of an individual if any unsecured creditor invokes it. However, cramdown confirmation does impose a modified projected disposable income rule, expanded to include all debtors. As the Plan is non-consensual, the Debtor must demonstrate that the Plan complies with the fair and equitable requirements under 1191(c), subsections (1) and (2), by demonstrating that all of the Debtor's projected disposable income over the term of the Plan will be applied to Plan payments, or that all of the property to be distributed under the plan is not less than the Debtor's disposal income. Debtor fails to do so.

20. Fifth, the Debtor must demonstrate she has the ability to make the payments to comply with Bankruptcy Code section 1191(c)(3)(A).

21. Sixth, under 1191(c)(3)(B), in the event of default, the Plan must contain appropriate remedies, including liquidation of nonexempt assets. As there is no means of implementation and no

financial information provided, the Plan cannot satisfy the confirmation requirements at Bankruptcy Code section 1191(b) and must be denied.

### B. THE PLAN VIOLATES §1122 AS THE CLASS 1 CLAIMS ARE SUBSTANTIALLY DISSIMILAR

22. Pursuant to 11 U.S.C. §1122(a), "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122. In providing for classification of claims or interests in plan of reorganization, each holder of an allowed claim secured by security interest in specific property must ordinarily be placed in a separate class. *Matter of Moore*, 81 B.R. 513, (Bankr. S.D. Iowa (1988); *See also*, *Matter of Bugg*, 172 B.R. 781 (E.D. Pa. 1994) (First lien creditor that had lien on debtor's property was not "substantially similar" to other first lien creditors with liens on different property of debtor and could not be classified in same class in Chapter 11 plan); *In re Commercial Western Finance Corp.*, 761 F.2d 1329 (Cal. 1985) (Where borrower notes that debtor partially assigned to investors were secured by different pieces of property, bankruptcy court's implicit finding that the claims were substantially similar was clearly erroneous).

23. Here, the Plan lists all secured claims (Claims 3, 4, and 5) together in the same class (Class 1), but the claims are substantially dissimilar, and therefore require separate classification. The Claims are held by different creditors, against different real properties, and secured by different loan documents. As a result, the Claims must be separately classified pursuant to 11 U.S.C. § 1122. Accordingly, confirmation of the Plan must be denied.

### C. THE PLAN TREATMENT IS UNCLEAR

24. Debtor suggests the amount of Creditor's Claim (if any) will be determined through the related Adversary Proceeding. In the event the Debtor is unsuccessful in avoiding Creditor's Claim in its entirety, Debtor proposes to bifurcate Creditor's Claim into a secured claim and unsecured claim based

on the alleged value of the Property. (See Plan, Class 1). The unknown secured portion shall be paid by the Debtor in full upon confirmation.

25. First, the treatment of Creditor's Claim is contingent upon a judgment in the Adversary Case in the Debtor's favor. However, it is unclear when the Adversary Case will be resolved and if the Court will enter a judgment in the Debtor's favor. The Plan fails to provide for an alternative Plan treatment in the event the Court denies the Debtor's requested relief in the Adversary Case and overrules the Debtor's Claim Objection.

26. Second, Debtor suggests the amount of Creditor's Claim (if any) will be determined through the related Adversary Proceeding. In the event the Debtor is unsuccessful in avoiding Creditor's Claim in its entirety, Debtor proposes to bifurcate Creditor's Claim into a secured claim and unsecured claim based on the alleged value of the Property. However, the Plan fails to disclose the current value of the Property and how the Debtor arrived at the proposed valuation. No evidence of valuation is provided. Accordingly, Creditor is unable to determine the amount of its secured or unsecured claim to make an informed decision as to whether accept or reject the Plan. As a result, the Plan treatment is unclear and speculative, at best. Accordingly, confirmation of the Plan must be denied.

27. Moreover, in the event Debtor provides additional information regarding the proposed cramdown, Creditor reserves its right to make a §1111(b) Election prior to confirmation of the Plan.

D. THE PLAN LACKS FEASIBILITY

28. New § 1191(c)(3) adds two additional factors to the "fair and equitable" analysis. First, new § 1191(c)(3)(A) requires that the debtor will be able to make all payments under the plan,244 or that there is a reasonable likelihood that the debtor will be able to make all payments under the plan.245 The requirement strengthens the more relaxed feasibility test that § 1129(a)(11) contains. Section 1129(a)(11) requires only that confirmation is not likely to be followed by liquidation or the need for further reorganization unless the plan proposes it.246

Second, new § 1191(c)(3)(B) requires that the plan provide appropriate remedies to protect the holders of claims or interests if the debtor does not make the required plan payments.

29.    Retaining property that is not producing net income is evidence of bad faith and such a plan should not be confirmed. *See In re Lindsey*, 122 B.R. 157 (Bankr. M.D. Fla. 1991) ("[T]he court may not and should not permit the debtors to use a [plan] to retain and increase their equity in investment property at the expense of their unsecured creditors."); *see also Loop Corp. v. United States Trustee*, 379 F.3d 511, 515-16 (8th Cir. 2004) (properties must generate positive cash flow to justify retention; negative cash flow alone is cause to dismiss or convert under § 1112(b)).

30.    In the present case, there is no indication the alleged business generates any income. Further, it is unclear if the Property itself generates sufficient rental income to pay taxes, insurance, and mortgage payments. Based upon a lack of income, the Plan cannot satisfy the feasibility requirements.

31.    As discussed above, the success of the Debtor's Plan appears contingent upon the successful avoidance of Creditor's Claim. However, in the event the Debtor's Adversary Case is unsuccessful, it is unclear how the Debtor will pay Creditor's Claim. As of the petition date, the Claim exceeded $900k. At the same time, it appears the Property produces little to no income. Assuming the Debtor fails in her attempts to avoid or cramdown the Claim, the Plan will lack feasibility. Moreover, even if the Debtor successfully bifurcates the claim into a secured and unsecured portion, it is unclear how the Debtor intends to pay the secured claim in full upon confirmation of the Plan.

32.    If a final payment, in the form of a 'balloon' payment, is proposed to come from new financing to be acquired by the Debtor . . . then proof of feasibility is necessary. Whether that balloon payment can likely be made . . . requires credible evidence proving that obtaining that future financing is a reasonable likelihood." *In re Seasons Partners, LLC*, 439 B.R. 505, 515 (Bankr. D. Ariz. 2010); *see also*, *In re Inv. Co. of The Southwest, Inc.*, 341 B.R. 298 (B.A.P. 10th Cir. 2006); *In re Arts Dairy, LLC*,

432 B.R. 712, 718 (Bankr. N.D. Ohio 2010); *In re Bashas' Inc.*, 437 B.R. 874, 915-16 (Bankr. D. Ariz. 2010).

33. The Debtor has provided no evidence to demonstrate how she would fund the required balloon payment upon confirmation to pay the secured claim in full. The success of the Debtor's reorganization is contingent upon a favorable judgment in the Adversary Case and the Debtor's ability to pay the secured claim in full at confirmation (at a yet to be determined amount) Accordingly, the Plan lacks feasibility and confirmation must be denied.

E.  **DEBTOR FAILED TO FILE REQUIRED SUBCHAPTER V DOCUMENTS AND MONTHLY REPORTS**

34. On September 4, 2020, the Court granted the Debtor's Motion to Convert, converting the Debtor's Chapter 13 Bankruptcy Case to a Subchapter V.

35. Within 7 days, a small business debtor is required to file: (a) its most recent balance sheet, statement of operations, cash-flow statement, and Federal income tax return; or (b) a statement made under penalty of perjury that no balance sheet, statement of operations, or cash-flow statement has been prepared and no Federal tax return has been filed. 11 U.S.C. §1116. To date, the Debtor has yet to file the required documents, which were due by September 11, 2020. Nor has the Debtor filed amended schedules and statements for the Chapter 11 Case.

36. Debtor is delinquent on monthly operating reports since conversion of the case, including the months of September 2020 – December 2020. 11 U.S.C. §308.

37. Pursuant to 11 U.S.C. §1112(b)(4), a court shall dismiss a case for cause including "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" 11 U.S.C. §1112(b)(4)(F). Further, a court may dismiss a Chapter 11 case based on failure to timely provide information reasonably requested by the United States Trustee or failure to comply with an order of the Court. 11 U.S.C. §1112(b)(4) (E), (F), (H). As a result, cause exists to dismiss this case.

**WHEREFORE**: Creditor respectfully request:

1. That the Court deny confirmation of the Plan;

2. That the Court dismiss or convert the case; and

3. Such other relief as the Court deems just and proper.


Dated: January 22, 2021                                           **ALDRIDGE PITE, LLP**

                                                                                                                   _/s/ Jenelle C. Arnold_
                                                                                                                 Jenelle C. Arnold, Esq.
                                                                                                                 Attorney for Creditor,

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In Re:

HELEN RACANELLI,

                    Debtor.

-------------------------------------------------------------X

Case No. 16-22617-rdd

Chapter 11
Subchapter V

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the Objection to Confirmation of Subchapter V Small Business Debtor Plan of Reorganization was mailed by U.S. First Class Mail the January 22, 2021, to the parties listed below:
TO:

| | |
|---|---|
| Helen Racanelli<br>16 Riverside Place<br>Dobbs Ferry, NY 10522 | Linda M. Tirelli<br>Tirelli Law Group, LLC<br>50 Main Street<br>Suite 1265<br>White Plains, NY 10606 |
| Shannon Anne Scott<br>Office of the U.S. Trustee<br>201 Varick Street<br>Sute 1006<br>New York, NY 10014 | Yann Geron<br>Geron Legal Advisors LLC<br>370 Lexington Avenue<br>Suite 1101<br>New York, NY 10017 |

Dated: January 22, 2021

                Respectfully Submitted
                Aldridge Pite, LLP

                 /s/  Jenelle C. Arnold
                By: Jenelle C. Arnold, Esq.
                *Attorneys for Movant*
                40 Marcus Drive, Suite 200
                Melville, New York 11747
                (631) 454-8059
                jarnold@aldridgepite.com